IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| JOHN ORLANDO WALKER,    ) | |
| ) | |
| Petitioner,    ) | |
| ) | |
| v.    ) | CIVIL ACTION NO. 5:05-CV-222 (MTT) |
| ) | |
| DANNIE THOMPSON, *Warden*,    ) | |
| ) | |
| Respondent.    ) | |
| _____) | |

## ORDER

This matter is before the Court on the Petitioner's request for stay and abeyance of this action so he can exhaust his state ineffective assistance of appellate counsel claim. For the following reasons, the Petitioner's request to "stay and abey" is **GRANTED**.

Although the relevant performance is that of appellate counsel, the facts of the trial are particularly relevant. The Petitioner, Charles Brown, Jr., and Roderick Hope were involved in a string of thefts, primarily of vehicles, that began August 29, 1997, in Worth County, Georgia, and continued in Detroit, Michigan and Knoxville, Tennessee.[1] The group returned to Georgia, and planned another robbery so they would have funds to repaint the stolen vehicles and change the serial numbers.

On September 4, 1997, Mr. Edward Allen entered a store in Perry, Georgia while his wife remained in the passenger seat of their Cadillac Eldorado and worked on a crossword puzzle. Mr. Allen left the keys in the ignition. When Mr. Allen left the store,

---

[1] The facts are fully set forth in the Recommendation. (Doc. 112).

he was approached by two men wearing yellow gloves and carrying handguns who ordered him to get into his vehicle. Mr. Allen refused, and the two men got into the Cadillac and drove off. A Mercury Mountaineer soon emerged, and followed closely behind.[2] Mr. Allen called the police, who issued an alert for a maroon Cadillac Eldorado occupied by two Black men and an elderly White woman.

The man who sat behind Mrs. Allen robbed her of jewelry and her ATM card. Upon police pursuit, the man who sat behind Mrs. Allen jumped out the window of the speeding vehicle.

The Petitioner, covered in blood, hobbled to a gas station near the site where the robber jumped out of the Cadillac. He told a man he had been hit by a car on the interstate, and asked for assistance. While the man called for an ambulance, the Petitioner limped across the street and stood beside a dumpster. The police soon arrived, and located the Petitioner who then was transported to a hospital. Hope and Brown were apprehended within a day.

The Petitioner, Hope, and Brown were indicted September 16, 1997, in the Superior Court of Houston County. Brown entered a plea in exchange for testimony against the Petitioner and Hope. On January 30, 1998, the grand jury bailiff returned a second indictment against the Petitioner and Hope. It appears the second indictment served to remove any reference to Brown. The first indictment was dismissed on February 2, 1998.

---

[2] Some witnesses described the vehicle as a Ford Explorer, but it was later established that the vehicle was a Mercury Mountaineer, and that the vehicle resembles a Ford Explorer. The Mountaineer was stolen during a test drive in Michigan.

The Parties discussed discovery and *Bruton v. United States*, 391 U.S. 123 (1968) issues at length before trial began on February 3, 1998.  At a motions hearing on January 26, 1998, the co-defendants informed the trial judge that they had not received videotapes until the preceding Friday, January 23.  The most contentious videotape was a post-arrest interview of Hope that placed the blame on the Petitioner.  At that time, no transcript of the videotape had been prepared.

During a conference on February 2, the Petitioner and Hope addressed yet unresolved discovery issues.  The co-defendants moved for a continuance, and Hope's counsel moved to sever based upon the videotape of Hope's interview.  The trial judge denied the motions.  Notwithstanding any delay in production by the State, the trial judge ruled the disputed evidence admissible.  However, the trial judge was willing to provide the co-defendants with time to review the evidence.  The trial judge ordered the State to produce a redacted videotape and transcript that removed any reference to the Petitioner.  The State produced the redacted videotape and transcript February 6, 1998.

Before court resumed on February 9, Hope's counsel expressed concern with parts of the videotape that removed testimony that did not implicate the Petitioner.  The trial judge held that the videotape would be stopped at those parts, and the prosecutor would read the over-edited portions to the jury.

During the testimony of its witness that day, the prosecutor passed out redacted copies of the transcript to the jury and played the redacted videotape.  The Petitioner's trial counsel noticed that the redacted transcript failed to omit a statement that was edited on the redacted videotape, and he asked the trial judge to stop the videotape.[3]

---

[3] There is no record of either the redacted or unredacted transcript of Hope's testimony.

The Petitioner's trial counsel moved for a mistrial on the basis that this error constituted a *Bruton* violation. After the Parties discussed the motion out of the presence of the jury, the trial judge took a recess. During the recess, the prosecutor offered Hope a plea deal, which he took.[4] The trial judge denied the motion for a mistrial, but did grant the Petitioner's motion for directed verdict on the theft by receiving stolen property count (Count V).

The prosecution offered to place Hope on the witness stand for cross examination, but the Petitioner's trial counsel declined.[5] The jury was called back to the courtroom, and the trial judge instructed them to disregard Hope's testimony. Both sides then rested.

Later on February 9, the jury convicted the Petitioner of armed robbery (Count I), hijacking a motor vehicle (Count II), and kidnapping (Count III).[6] (Doc. 70-11, Trial Transcript at 1495). The Petitioner moved for a new trial and appealed. Due to the delay in state courts, the Petitioner sought federal habeas relief on July 1, 2005. Due to the extreme delay, this Court excused his failure to exhaust his available state remedies.[7] (Doc. 21).

---

[4] The record suggests the Petitioner was not given the same deal because he had a criminal record. (Doc. 70-11, Trial Transcript at 1391-92); (Doc. 97, Habeas Transcript at 251).

[5] At that time, defendants could have the final closing argument if they did not present any evidence. Calling Hope for cross examination apparently would have given the State the last word on closing. The prosecutor testified at the April 8, 2009, federal habeas hearing that the Petitioner's trial counsel would not have lost his right to a second closing by cross-examining Hope.

[6] The Recommendation states that the Petitioner was convicted of aggravated assault (Count IV), but this count ended in a mistrial. (Doc. 70-11, Trial Transcript at 1495).

[7] The Order denying the Respondent's Motion to Dismiss for failure to exhaust contains a detailed post-conviction procedural history. (Doc. 21).

The motion for new trial was denied in 2006, and again in 2009.  On June 22, 2011, the Georgia Court of Appeals affirmed the Petitioner's conviction.

On August 19, 2011, United States Magistrate Judge Charles H. Weigle recommended that the Petitioner's Petition for Writ of Habeas Corpus be denied.  (Doc. 112).  The Magistrate Judge recognized that the record was not sufficiently developed to evaluate appellate counsel's performance.  In his Objection, the Petitioner alleged appellate counsel failed to present issues raised in federal court to the Georgia Court of Appeals, failed to supplement the state court record with the transcript of the habeas hearing, and apparently failed to file a reply brief with the Georgia Court of Appeals.

The effectiveness of appellate counsel could not have been determined until the Georgia Court of Appeals affirmed the Petitioner's conviction.  Because the Petitioner has both exhausted and unexhausted claims (a "mixed petition"), the Court asked the Parties how they would like to proceed.  The Petitioner expressed interest in staying this action until he exhausted his ineffective assistance of appellate counsel claim in state courts.  The Respondent does not object to a stay.

In *Rhines v. Weber*, 544 U.S. 269 (2005), the Supreme Court approved of the stay and abey procedure that allows federal courts to stay a mixed petition to allow the petitioner an opportunity to present his unexhausted claims to a state court and return to federal court.  The Court clarified this procedure should only be used in the "limited circumstances" where "the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics."  *Id.* at 277-278.

These facts fall within the limited circumstances contemplated by *Rhines*. Here, the Petitioner had good cause for his failure to exhaust because he filed his federal habeas petition in 2005 and he could not have exhausted his ineffective assistance of appellate counsel claim until after the June 22, 2011, Georgia Court of Appeals decision. The unexhausted claims are potentially meritorious in light of the issues surrounding the unredacted transcript and testimony from the federal habeas hearing that may have affected the outcome of the Petitioner's appeal. Finally, there is no indication the Petitioner engaged in intentionally dilatory litigation tactics. The Petitioner waited over seven years after his conviction to file his federal habeas petition. This Court even excused his failure to exhaust his available state remedies. To the extent litigation has been dragged out, it is largely the fault of state courts, not the Petitioner.

To prevent petitioners from "dragging out indefinitely their federal habeas review," the Supreme Court requires district courts to "place reasonable time limits on a petitioner's trip to state court and back." *Rhines*, 544 U.S. at 278. *Rhines* approvingly cited a Second Circuit case that conditioned the stay on petitioners pursuing state court remedies within 30 days and returning to federal court within 30 days after state court exhaustion is completed.

Accordingly, because there is good cause, the ineffective assistance of appellate counsel claim is potentially meritorious, and there is no indication the Petitioner engaged in intentionally dilatory litigation tactics, the request to stay and abey is **GRANTED**. The Petitioner shall have 30 days to pursue state court remedies and 30 days to return to this Court after he has exhausted his state court remedies. The Court

will reserve judgment on the remaining claims until the Petitioner returns from exhausting his state court ineffective assistance of appellate counsel claim.

**SO ORDERED**, this the 3rd day of January, 2012.

S/ Marc T. Treadwell
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT
